UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| BRENTON S.,[1] | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) |
|     v. | ) No. 4:21-cv-00097-JMS-DML |
| | ) |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,[2] | ) ) |
| | ) |
|     *Defendant*. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Brenton S. filed for disability insurance benefits ("DIB") from the Social Security Administration ("SSA") on August 2, 2018, alleging an onset date of April 21, 2018. [Filing No. 8-5 at 2.] His application was denied initially on September 19, 2019, [Filing No. 8-3 at 2], and upon reconsideration on November 29, 2018, [Filing No. 8-3 at 20]. Administrative Law Judge Christopher Tindale ("the ALJ") conducted a hearing on April 3, 2019, [Filing No. 8-2 at 27], before issuing a decision on August 26, 2019, in which he concluded that Brenton S. was not entitled to receive benefits, [Filing No. 8-2 at 10-22]. The Appeals Council denied review on October 31, 2019. [Filing No. 8-4 at 6.] Brenton S. sought judicial review, and upon joint motion

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] According to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

by the parties, this Court remanded for further proceedings. [Filing No. 8-11 at 32-33.] The Appeals Council then remanded to the ALJ for further proceedings. [Filing No. 8-11 at 37-38.] The ALJ then conducted a second hearing on November 9, 2020, [Filing No. 8-10 at 30-62], before issuing a decision on March 23, 2021, in which he concluded that Brenton S. was not entitled to receive benefits, [Filing No. 8-10 at 5-24]. Brenton S. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

## I.
### STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards, and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*,

864 F.3d 523, 528 (7th Cir. 2017)).  The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion."  *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).  The ALJ must evaluate the following, in sequence:

> whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).  "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy."  *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe."  *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.*  The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  *Stephens*, 888 F.3d at 327.  When an ALJ's

decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Brenton S. was 31 years old on the alleged onset date. [Filing No. 8-10 at 21.] He holds a high school diploma, [Filing No. 8-10 at 21], and previously worked as a hotel cleaner, a maintenance mechanic, and a Metal Inert Gas ("MIG") welder, [Filing No. 8-10 at 21].[3] Brenton S. was a member of the United States Army Reserve from 2009 to 2018. [Filing No. 8-10 at 13.] During his military service, Brenton S. was activated from 2009 to 2012 and completed a tour in Iraq from September of 2010 to September of 2011. [Filing No. 8-10 at 13.] After leaving the Army, Brenton S. received services through the United States Department of Veterans Affairs ("the VA"), which determined that Brenton S. had a service-connected disability rating of 90%. [Filing No. 8-10 at 20.]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Brenton S. was not disabled. [Filing No. 8-10 at 5-24.] Specifically, the ALJ found as follows:

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

4

- At Step One, Brenton S. had not engaged in substantial gainful activity[4] since April 21, 2018, the alleged onset date. [Filing No. 8-10 at 8.]

- At Step Two, Brenton S. has "the following severe impairments: [o]steoarthritis, disorders of the spine, chronic pain syndrome, post-traumatic stress disorder [("PTSD")], mood disorder, anxiety disorder, [and] history of alcohol and drug abuse." [Filing No. 8-10 at 8.]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 8-10 at 8-9.]

- After Step Three but before Step Four, Brenton S. had the RFC to perform "medium work as defined in 20 CFR 404.1567(c) except [he] can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. [Brenton S.] can frequently stoop, kneel, crouch, or crawl. He is able to understand and remember a variety of task instructions. He retains the capacity to perform simple, repetitive, and routine tasks in an environment that does not require high production quotas. He retains the capacity for occasional and superficial interactions with his coworkers and supervisors and very little contact with the public; superficial contact is defined as no tandem tasks. [Brenton S.] retains the capacity to adjust to minor and infrequent changes. He may need supervisory support with goal-setting and planning with work changes." [Filing No. 8-10 at 12-21.]

- At Step Four, Brenton S. is unable to perform any past relevant work, including past relevant work as a hotel cleaner, a maintenance mechanic, and a MIG welder. [Filing No. 8-10 at 21.]

- At Step Five, relying on the testimony of the vocational expert ("VE") and considering Brenton S.'s age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he can perform in representative occupations such as a floor waxer, an industrial cleaner, and a sweeper/cleaner. [Filing No. 8-10 at 21.]

### III.
### DISCUSSION

Brenton S. argues that the ALJ: (1) improperly defined superficial contact as "no tandem tasks"; (2) failed to account in the RFC for his moderate limitations in dealing with others,

---

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

managing oneself, and concentrating, persisting, or maintaining pace; (3) improperly considered opinion evidence; (4) failed to build an accurate and logical bridge when evaluating his subjective complaints; and (5) erred at Step Five by asking improper hypothetical questions to the VE and by relying on the "outdated" Dictionary of Occupational Titles. [Filing No. 10 at 6-14.] Because the Court has determined that the first issue requires remand, it will begin with discussing that issue.

### A. The ALJ's Definition of Superficial Contact

Brenton S. argues that the ALJ erred by defining "superficial contact" as "no tandem tasks." [Filing No. 10 at 6.] Brenton S. argues that the ALJ's definition is incorrect because "superficial contact refers to the quality of the contact and not to the quantity of such contact." [Filing No. 10 at 6.] Brenton S. argues that the ALJ used this definition to determine that he had the capacity to perform "entry-level unskilled work," but in doing so he would still be required to "respond to a supervisor when the supervisor talks to him and must respond to most conversations from coworkers." [Filing No. 10 at 6.]

The Commissioner responds that the ALJ's definition of "superficial interactions" was not per se inadequate. [Filing No. 11 at 16-17.] The Commissioner argues that Brenton S.'s argument is "contrary to the ordinary meaning of the word tandem" because a limitation on tandem tasks speaks to not only the frequency of contact but also precludes Brenton S. from "performing task[s] as part of a team or working with another person to achieve a common goal." [Filing No. 11 at 17.]

Brenton S. replies that a limitation on tandem tasks does not "deal with the quality of the contact between a supervisor or coworkers on 40 hour a week jobs. For example, if a worker argues with his or her supervisor for one hour each day, this would only be one contact a day (the

quantity of the contact), but it would keep the worker from being productive for one hour each day, 1/8 of the workday (the quality of the contact)." [Filing No. 13 at 3.]

An ALJ must "build an accurate and logical bridge from the evidence to [the] conclusion so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review.'" *Giles v. Astrue,* 483 F.3d 483, 487 (7th Cir. 2007) (internal quotations omitted); *see also O'Connor-Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir. 2010) ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [his] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits."). The RFC assessment "must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft,* 539 F.3d at 676; *see also* 20 C.F.R. § 404.1545(a)(1) ("We will assess your [RFC] based on all relevant evidence in your case record.")

Here, the ALJ determined that Brenton S. had the RFC to perform "medium work" with limitations and determined that Brenton S. had the capacity for "superficial interactions with his coworkers and supervisors." [Filing No. 8-10 at 12.] The ALJ defined "superficial interactions" as "no tandem tasks." [Filing No. 8-10 at 12; Filing No. 8-10 at 54.] During the second hearing, the VE testified that an employee limited to superficial contact, as defined by the ALJ, would have little control over their interactions with supervisors and would be required to respond to coworkers' questions or requests for help, either directly or through a supervisor. [Filing No. 8-10 at 59-60.]

7

Courts within this Circuit have observed that superficial contact refers to the "quality of the contact" rather than the "quantity of the contact." *Wartak v. Colvin*, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016); *see also, Kohne-Gaier v. Saul*, 2020 WL 5810164, at *6 (N.D. Ind. Sept. 30, 2020); *Andrea K. v. Saul*, 2020 WL 4748150, at *9 (N.D. Ill. Aug. 17, 2020); *but see*, *Reynolds v. Kijakazi*, 25 F.4th 470, 470 n. 3 (7th Cir. 2022) (noting that this distinction is "merely persuasive authority in this court"). The quality of contact may include considerations of "handling instruction and criticism from supervisors, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintaining socially appropriate behavior, and adhering to basic standards of neatness and cleanliness." *Wartak*, 2016 WL 880945, at *7.

In light of the VE's testimony, the Court finds that the ALJ's definition of "superficial contact" as "no tandem work" does not speak to the quality of interactions required at the assessed level. Even if the Court were to accept the Commissioner's explanation of "no tandem work" as a limitation on performing work as "part of a team," the ALJ's definition still does not speak to whether Brenton S. would be capable of responding to his supervisor or to requests from coworkers. [Filing No. 8-10.] Additionally, the Court notes that the ALJ defined superficial contact in his first opinion as "no tandem tasks, no arbitration, and no conflict resolution." [Filing No. 8-2 at 15.] It is unclear to the Court why the ALJ determined on remand that the record now supports a broader, less restrictive definition of superficial contact. In any event, the ALJ's analysis was not clearly articulated in light of the VE's testimony.

The ALJ's failure to define superficial contact in a way that addresses the quality of contact is compounded by evidence in the record suggesting that Brenton S. has a limited capacity to perform the necessary quality of contact identified by the VE. Specifically, the record contains voluminous references to the limiting effects of Brenton S.'s PTSD on his ability to interact with

8

others and to respond to direction. [Filing No. 8-3 at 6 (state agency consultant noting that Brenton S.'s ability to interact with others is "markedly impaired"); Filing No. 8-6 at 43 ("I try to be respectful of [authority figures], but I have had issues [such as anger out bursts]"); Filing No. 8-6 at 46 ("My PTSD causes me trouble with . . . understanding instructions and getting along with others."); Filing No. 8-6 at 49 ("Have trouble dealing with stressful situations and it causes me to lose my temper and take it out on those around me").]

Accordingly, the Court finds that the ALJ did not build a logical bridge between the evidence and the RFC. *Wartak*, 2016 WL 880945, at \*7. In light of this error, the Court must remand this case for further consideration. *Karr*, 989 F.3d at 513.

### B. Additional Issues

Brenton S. raises four additional issues: (1) that the ALJ failed to account in the RFC for his moderate limitations in dealing with others, managing oneself, and concentrating, persisting, or maintaining pace; (2) that the ALJ improperly considered opinion evidence; (3) that the ALJ failed to build an accurate and logical bridge when evaluating his subjective complaints; and (4) that the ALJ erred at Step Five by asking improper hypothetical questions to the VE and by relying on the "outdated" Dictionary of Occupational Titles. [Filing No. 10 at 6-14.] The Court need not resolve these issues because it finds that the issue discussed above is dispositive.

However, the Court notes that many of remaining issues to be addressed on remand are similar to those discussed in *Mandrell v. Kijakazi*, 25 F.4th 514 (7th Cir. 2022)(discussing the limiting effects of a veteran claimant's PTSD and finding that remand was appropriate in light of "the ALJ's questionable credibility findings, cursory analysis of symptoms . . . and selective discussion of the evidence"). On remand, the ALJ should take care to fulfill his obligation to "adequately reconcile" the evidence to his ultimate conclusion. *Id.*

## IV.
## CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Brenton S.'s benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) as detailed above. Final Judgment shall enter accordingly.

Date: 3/3/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**